UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

JOSEPH EUGENE ALLEN,

        Plaintiff,

   v.

CHAPLAIN THOMPSON,
CHAPLAIN STALHNECKER,
CORRECTIONAL OFFICER STEWART,

        Defendants.

Case No. 6:22-cv-00542-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Pro se plaintiff Joseph Allen, an adult in custody in the Oregon Department of Corrections ("ODOC"), brings this civil rights action under 42 U.S.C. § 1983 alleging constitutional violations that occurred during his incarceration at Oregon State Penitentiary ("OSP") between January and June of 2020. In claims 1a, 2a, and 3a, plaintiff generally alleges that defendants Chaplain Dennis Stalnecker and former Chaplain Karuna Thompson violated his religious rights under the First and Fourteenth Amendments by cancelling the "Friday Obligatory Congregational Nation of Islam Congregational Jumma Prayer Service" between January 3, 2020, and April 3, 2020. Compl. 5–7, ECF 1. In claims 4a, 5a, and 6a, plaintiff alleges that defendant Correctional Officer Bryan Stewart violated his religious rights under the First and

1 – OPINION AND ORDER

Fourteenth Amendments by denying him access to religious materials by "refusing to open the [Nation of Islam]'s Religious Material Storage Closest during the Friday [National of Islam] Jumma Prayer Services" between April 3, 2020, and July of 2020.[1] *Id.* at 8–10.

Currently pending is defendants' Motion for Summary Judgment (ECF 43), which asserts that (1) plaintiff failed to exhaust the administrative remedies for Claims 1a, 2a, and 3a, and (2) that Claims 4a, 5a, and 6a fail because there is no admissible evidence in the record that Officer Stewart was responsible for providing plaintiff access to religious materials. *See* Reply 2, ECF 59.

## I. Summary Judgment Standard

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324 (citing FED. R. CIV. P. 56(e)).

The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047,

---

[1] In his complaint, plaintiff also asserted a class action for each of the individual violations described in claims 1a through 6a. *See id.* at 3–10. Those class action claims were dismissed with prejudice because they failed to satisfy at least two essential requirements of a class action—numerosity and superiority—under Federal Rule of Civil Procedure 23. *See* Opinion and Order 3 (Jan. 9, 2023), ECF 24.

1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## II.     Religious Practice Claims Against Defendants Stahlnecker and Thomas (Claims 1a, 2a, and 3a)

Defendants Stahlnecker and Thomas move for summary judgment against plaintiff's claims 1a, 2a, and 3a related to the suspension of the Nation of Islam Jummah Prayer services primarily on the grounds that plaintiff failed to properly exhaust available administrative remedies. *See* Mot. Summ. J. 8–9, ECF 43. The Prison Litigation Reform Act ("PLRA") prescribes that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. Exhaustion is a precondition to an inmate bringing any lawsuit challenging prison conditions. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Under the PLRA, exhaustion is mandatory and the court lacks discretion to consider claims challenging prison conditions. *Id.* The purposes of the exhaustion requirement are two-fold: to protect administrative agency authority, by providing agencies with the opportunity to correct their mistakes before being brought into federal court, and by encouraging adherence to agency procedures; and to promote efficiency because resolution by an agency is typically faster and more economical than litigation in federal court. *Id.* at 89.

"Failure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock,* 549 U.S. 199, 204 (2007)). The court employs a burden-shifting framework to analyze administrative exhaustion under the PLRA. First, the defendant must "prove that there was an available

administrative remedy and that the prisoner did not exhaust that available remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). Next, "the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him[.]" *Id*. This can include "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id*. An inmate need only exhaust those remedies that are available "as a practical matter," meaning that the remedy must be "capable of use; at hand." *Brown*, 422 F.3d at 937.

Because exhaustion of remedies is an affirmative defense, the defendant has the burden of raising and proving that an incarcerated plaintiff failed to satisfy the PLRA's exhaustion requirement. *Jones*, 549 U.S. at 216. Although the burden of proof remains with the defendant, the defendant is entitled to summary judgment if undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust. *Albino*, 747 F.3d at 1166, 1172.

Defendants have satisfied their initial burden of showing that an administrative remedy was available to plaintiff and that he failed to exhaust claims 1a, 2a, and 3a. ODOC's grievance process is set forth in the Oregon Administrative Rules. *See* OAR, Ch. 291, Div. 109; *see also* Kidwell Decl., Ex. 2, ECF 44-2. The grievance process consists of three steps for handling AIC complaints: filing a grievance and two rounds of appeal. *See* OAR 291-109-0205. Plaintiff submitted three grievances related to the suspension of Jummah Prayer services: Grievance No. OSP_2020_01_039 (Jan. 23, 2020), Kidwell Decl., Ex. 7 at 2, ECF 44-7; Grievance OSP_2020_02_015 (Feb. 6, 2020), Kidwell Decl., Ex. 8 at 5, ECF 44-8; and Grievance OSP_2020_03_025 (Mar. 10, 2020), Kidwell Decl., Ex. 9 at 2, ECF 44-9. Prison officials responded to the first two grievances, and plaintiff did not properly appeal those responses because the grievance appeal forms that plaintiff used did not comply with ODOC rules. The

4 – OPINION AND ORDER

responses informed plaintiff that his appeals were returned to him to make corrections—the first because plaintiff did not include the "original paperwork submitted with it indicating the grievance this appeal is appealing," Kidwell Decl., Ex. 10 at 1, ECF 44-10, and the second because "multiple original grievances and appeals were submitted" and thus it was "unclear what grievance or action is being submitted." *Id.* at 3. Both of these responses informed plaintiff that he could make corrections to the grievance appeal by "provid[ing] the original documents related to [the] grievance appeal as specified by the rule and resubmit [the] appeal." *Id.* at 1, 3. Each of the responses also cited and quoted OAR 291-109-0230, which requires that an "appeal must include the original grievance, attachments, and staff response(s)." *Id.* Plaintiff did not, however, submit any corrected appeal form and thus did not fully exhaust the administrative remedies for his complaint about the suspension of the Jumma Prayer services.

      The burden now shifts to plaintiff to "show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him[.]" *Williams*, 775 F.3d at 1191. Plaintiff asserts that he "follow[ed] all procedures according to the rules that were given to me from the directions of the grievance application as well as legal assistant advice from a certified law library worker (legal assistant) at OSP." Resp. 2, ECF 55. Neither of these assertions change the undisputed fact that the grievance appeal response forms clearly and unequivocally informed plaintiff that he was required to correct and resubmit the grievance appeal with the proper paperwork to continue the appeal—and this plaintiff did not do. *See Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) ("[The PLRA] requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process.") (quoting *Woodford,* 548 U.S. at 90). Thus, plaintiff has not shown that administrative remedies were effectively unavailable to him due to the incomplete or

5 – OPINION AND ORDER

misleading actions of prison officials. Nor has plaintiff shown that he "took reasonable and appropriate steps to exhaust his [] claim and was precluded from exhausting, not through his own fault but by the [prison official's] mistake." *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010). Defendants Stalnecker and Thompson are therefore entitled to summary judgment on plaintiff's claims 1a, 2a, and 3a for failure to exhaust. The Ninth Circuit has held that the dismissal of claims due to the failure to exhaust under these circumstances must be without prejudice. *See Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005) ("[A] district court must dismiss a case without prejudice 'when there is no *presuit* exhaustion,' even if there is exhaustion while suit is pending.").

### III. Religious Materials Claims Against Defendant Stewart (Claims 4a, 5a, and 6a)

Defendant Stewart moves for summary judgment against plaintiff's "access to religious materials" claims 4a, 5a, and 6a against him. Stewart asserts there is no evidence that he was the official responsible for providing plaintiff access to religious materials and thus he did not cause plaintiff's alleged constitutional injuries. Alternatively, Stewart asserts that he is entitled to qualified immunity on these claims. Mot. Summ. J. 10, 12, ECF 43; Reply 5, ECF 59.

The evidence in the record shows that the chapel at OSP was closed in March of 2020 due to protocols put in place to contain the spread of COVID-19. Stahlnecker Decl. ¶ 19, ECF 45; *see also id.*, Ex. 4 at 2, ECF 45-4 (OSP newsletter to inmates explaining that "[d]ue to the Coronavirus protocol, all Chapel programming is suspended until further notice"). Inmates were directed to "send an AIC communication to Dennis Stahlnecker" if they "would like to speak with a chaplain." *Id.*, Ex. 4 at 2, ECF 45-4. Plaintiff submitted Grievance No. OSP_2020_4_090 regarding access to religious materials on April 23, 2020. Kidwell Decl., Ex. 11 at 2, ECF 44-11. In responding to the grievance, prison officials wrote that "[p]er AIC newsletter the Chapel is

closed due to Covid-19 protocol and communications regarding religious services should be sent to Chaplain Stahlnecker." *Id.* at 1. Plaintiff was therefore repeatedly told to direct any request for religious materials to Stahlnecker, not to Stewart.

Plaintiff asserts that he verbally raised the issue regarding closet access with Chaplain Stahlnecker and that Stahlnecker told plaintiff that "Officer Stewart would be the one with the keys to [the] religious storage closet and talk to him[.]" Allen Aff. 2, ECF 56 (some capitalization omitted). Plaintiff then claims that Stewart told plaintiff that "he had no control over the closet without permission from Stahlnecker and that it was obvious . . . Stahlnecker was giving us the 'run around.' " *Id.* at 2–3 (some capitalization omitted).

Stewart's response, in other words, was entirely consistent with the other evidence in the record, including the response to plaintiff's grievance on this issue, directing inmates to communicate with Chaplain Stahlnecker regarding religious services. If anything, plaintiff's complaint seems to be primarily aimed at Stahlnecker who, plaintiff asserts, was "giving us the run around" about how to get access to the religious closet. Allen Aff. 3, ECF 56. But plaintiff brought this claim solely against Stewart, and there is no evidence that it was Stewart who caused plaintiff any alleged constitutional injury. *See Mabon v. Swarthout*, No. 2:13-cv-2208-WBS-KJN, 2016 WL 6248414, at *22 (E.D. Cal. Oct. 25, 2016) ("A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains.") (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). Therefore, Stewart is entitled to summary judgment on plaintiff's claims 4a, 5, and 6a.

**ORDER**

Defendants' Motion for Summary Judgment [43] is granted, and claims 1a, 2a, and 3a against defendants Stahlnecker and Thomas are dismissed without prejudice, and claims 4a, 5a, and 6a against defendant Stewart are dismissed with prejudice.

IT IS SO ORDERED.

DATED July 18, 2024.

                                                      /s/ Youlee Yim You
                                                      Youlee Yim You
                                                      United States Magistrate Judge